UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,                            Case No. 14-20780
                                           Hon. Matthew F. Leitman

v.

CURTIS SCOTT,

     Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS (ECF ## 15, 16, 17)

On December 9, 2014, a grand jury indicted Defendant Curtis Scott ("Scott") on one count of making a false statement to a federal agent in violation of 18 U.S.C. § 1001.  (*See* ECF #10.)  The indictment alleges that Scott lied when he told an FBI agent that he (Scott) did not possess a cellular phone that was used by a suspected carjacker, Roland Hubbard ("Hubbard").  (*See id.*)  Scott has now filed three separate motions to suppress evidence that the Government may introduce against him at trial.  (*See* ECF ## 15-17.)  For the reasons stated in this Opinion and Order, the Court **DENIES** Scott's motions.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 12, 2013, two men approached a custodian at Seaholm High School in Birmingham and stole his car at gunpoint.  Police later located the car driving south on I-75 and pursued the vehicle as it drove into Detroit.  The suspects

1

eventually abandoned the car and took off on foot.  One of the suspects, Hubbard, was eventually captured in a vacant home.  Police never found the second suspect.

After his arrest, Hubbard agreed to speak with the Detroit Gang Intelligence Unit about gang activity unrelated to the carjacking.  Two members of the FBI Oakland County Violent Gangs Task Force – FBI Special Agent Jeff Jacobs and Michigan Department of Corrections Officer Matthew Wieas (collectively, the "Agents") – observed Hubbard's interview.  During this interview, Hubbard purportedly said that he lived with Scott, and he identified Scott as his uncle.  Hubbard also told the gang unit that he had a cellar phone and that the phone was in Scott's possession (the "Hubbard Phone").

Based on the information Hubbard provided in the interview, the Agents decided to speak with Scott.  They hoped Scott could provide them with additional information about Hubbard and the carjacking and that he could lead them to the Hubbard Phone, which police had been unable to locate.

On November 14, 2013, the Agents travelled to Scott's place of employment, the Coin-O-Matic laundromat in Detroit.  They approached Scott, identified themselves, and indicated that they wished to speak with Scott.  Scott and the Agents then went to an area in the back of the laundromat where they could speak in private.  The Agents asked Scott questions about his relationship

2

with Hubbard and about the carjacking.  Scott admitted that he knew Hubbard and had acted as Hubbard's mentor.

The Agents also asked Scott questions about the Hubbard Phone.  Scott gave the Agents the phone number for the Hubbard Phone, but he denied that he was in possession of the phone.  Scott then agreed to accompany the Agents in their car to an abandoned home where Scott believed Hubbard was living and where the Hubbard Phone may have been located.  When the Agents and Scott arrived at that location, however, the door was locked, and the Agents declined Scott's offer to break the door of the home down so they could continue their search.

The Government says that Scott was lying when he told the Agents that he did not have the Hubbard Phone.  Scott's denial forms the basis of the charge that Scott violated 18 U.S.C. § 1001.  (*See* ECF #10.)

Scott has now filed three motions to suppress evidence the Government may introduce against him at trial:

- A motion to suppress the statements Scott made to the Agents on November 14, 2013 (ECF #17);
- A motion to suppress evidence seized pursuant to a November 18, 2013, search warrant for data from the Hubbard Phone (ECF #15); and
- A motion to suppress evidence seized pursuant to warrantless orders issued on November 18, 2013, and January 9, 2014, for data related to the location and call history of the Hubbard Phone and the cellular phone that Scott used (the "Scott Phone") (ECF #16).

3

The Court held an evidentiary hearing and heard legal argument on the three motions to suppress on June 23, 2015. It will now address each motion in turn.

## ANALYSIS

### A.  Scott's Motion to Suppress His Statements to the Agents

Scott seeks to suppress the statements he made to the Agents during his encounter with them on November 14, 2013. Scott argues that the Court should exclude those statements on the grounds that they were involuntary and that their admission into evidence would violate his Fifth Amendment rights. (*See* ECF #17.)

At the evidentiary hearing, the Court heard testimony from the Agents and from Scott. The Agents and Scott characterized their encounter very differently. The Agents explained that they met with Scott to seek his help in their investigation *into Hubbard*, not to gather information to be used *against him* (Scott); that the meeting was cordial; that Scott was cooperative; that they never restrained nor handcuffed Scott in any way; and that they left the meeting believing that Scott would help them in their investigation of Hubbard and the carjacking. The Agents further testified that they did not frisk Scott before they placed him in their car and sat him directly behind them in the back seat (as they drove to the abandoned house where Hubbard may have been living). In contrast, Scott testified that the Agents threatened to have him thrown in jail if he did not

4

cooperate with their investigation; were aggressive in their questioning; implied that he may have been involved in a series of carjackings; confronted him about his past criminal history; and made him feel as if he was not free to stop or leave the meeting. Scott did acknowledge, however, that he was neither physically restrained nor handcuffed during his meeting with the Agents.

The Court has carefully considered all of this testimony and the demeanor of these witnesses, and it finds the version of events offered by the Agents more credible than that offered by Scott. Scott's testimony cannot logically be squared with one undisputed fact. Scott maintains that the Agents regarded him as the ringleader of a carjacking gang and confronted him as if he was a criminal. But it is undisputed that when Scott accompanied the Agents to the house in which Hubbard may have been living, the Agents sat him in the back seat of their car and did not restrain him in any way. The Court finds persuasive the Agents' insistence that they never would have proceeded in this manner – i.e., allowing Scott to sit unrestrained and out of their view in a spot from which he could have easily attacked them[1] – if, as Scott claims, they suspected that Scott was connected to violent crime or if the environment of the meeting was as confrontational as Scott claims. When the governing law is applied to the Agents' version of the facts, it

---

[1] The Agents' car was not a police cruiser. Instead, it was an ordinary civilian vehicle, and it did not have a partition of any kind between the front and back seats.

5

becomes clear that Scott's statements were not involuntary and their admission would not violate Scott's Fifth Amendment rights.

"In order to determine whether a [statement] was voluntarily made, a court must evaluate the totality of the circumstances surrounding the interrogation to determine whether the defendant's will was overborne and his capacity for self-determination critically impaired. Coercive police activity is a necessary predicate to the finding that a confession is not voluntary." *Loza v. Mitchell*, 766 F.3d 466, 477 (6th Cir. 2014) (internal punctuation and citation omitted). "In addition to the crucial element of police coercion, courts consider the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." *Id.* at 478 (internal quotation marks omitted).

Here, the Court finds that, as the Agents testified, they did not engage in conduct that overcame Scott's will and/or critically impaired his capacity for self-determination. Moreover, the meeting between the Agents and Scott lasted a short period of time – roughly thirty minutes – and occurred during the middle of the day in a location that was familiar to Scott. There is also no indication that Scott was in poor physical or mental health during the meeting, nor that Scott asked for a lawyer or requested assistance of any kind. All of these facts compel the conclusion that Scott's statements to the Agents were not involuntary.

6

Furthermore, Scott cites only a single case in which a federal court has found a defendant's statement to be involuntary, and that case – *United States v. Brown*, 557 F.2d 541 (6th Cir. 1977) – is distinguishable.  In *Brown*, the Sixth Circuit excluded a nineteen-year-old defendant's confession as involuntarily where, among other things, (1) it was made in the back seat of a police car while the defendant was handcuffed and seated between two police officers, (2) the defendant "was struck by one of the officers in the car at the time he made the incriminating statements," (3) the confession was "induced by [the defendant's] overwhelming fear that he would be beaten by police," and (4) the defendant was in "hysterics" as he confessed, and was "crying, screaming and thrashing about." *Id.* at 548, 550, 554.   Here, Scott's statements were made at his place of employment, not the "inherently coercive setting" of a police car.   *Id.* at 551. Moreover, Scott has never accused the Agents of physically assaulting him or placing him in fear of a physical assault.  Nor was Scott "crying, screaming, and thrashing about" as he spoke with the Agents.   *Brown* thus does not support suppression here.

Finally, even if Scott's statements to the Agents had been involuntary, the Court would not suppress the statement that forms the basis of the charge against him – i.e., Scott's allegedly-false statement that he did not have the Hubbard Phone.  Admission of that statement into evidence is permissible because the Fifth

7

Amendment does not "confer[] a privilege to lie." *Brogan v. United States*, 522 U.S. 398, 404 (1998).  Indeed, "while the Fifth Amendment may protect [a] defendant's right to remain silent, it does not give him the right to lie once he chooses to speak." *United States v. Vreeland*, 684 F.3d 653, 660 (6th Cir. 2012). Thus, Scott "cannot invoke the Fifth Amendment to protect the [alleged] falsehoods … that resulted in his [prosecution] under 18 U.S.C. § 1001." *Id.*[2]

**B.    Scott's Motion to Suppress Evidence Seized Pursuant to the November 18, 2013, Search Warrant for the Hubbard Phone**

On November 18, 2013, Michigan's 48th District Court issued a warrant for data from the Hubbard Phone (the "November 18 Warrant").  (*See* ECF #15 at Pg. ID 56-58.)  The November 18 Warrant authorized police to seize "[a]ny/all account records, including incoming/outgoing telephone calls [] and incoming/outgoing text messages" from the Hubbard Phone for November 11 and 12 of 2013.  (*Id.*) Scott now moves to suppress these text messages and calling records on the ground that the affidavit supporting the application for the November 18 Warrant failed to establish probable cause that the records contained evidence of a crime.  (*See id.* at

---

[2] *See also United States v. Melancon*, 662 F.3d 708, 712 (5th Cir. 2011) ("The exclusionary rule does not act as a bar to the prosecution of a crime where the statements themselves are the crime").

Pg. ID 48-52.)  However, Scott lacks standing to seek suppression of the evidence from the Hubbard Phone.[3]

"[A] defendant has standing to challenge the admission of evidence only if the defendant's own constitutional rights have been violated."  *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005) (concluding that defendant could not challenge admission of evidence against him obtained from or resulting from unconstitutional search of co-defendant's car).  Courts "determine standing [in this context] by deciding whether a defendant can establish a legitimate expectation of privacy in the area searched or the items seized."  *Id.* (internal quotation marks omitted).  Where a defendant seeks to suppress text messages retrieved from a cell phone, he "must show, first, that he had an actual, subjective expectation of privacy in the text messages; and second, that his expectation was objectively reasonable."  *United States v. Gonzalez*, 560 Fed. App'x 554, 558 (6th Cir. 2014) (internal quotation marks omitted) (holding that defendant failed to satisfy his

---

[3] The Court acknowledges that the Supreme Court has at times eschewed the term "standing" in the Fourth Amendment context and, instead, has focused on whether a defendant seeking suppression had a reasonable expectation of privacy in the thing being searched. *See Rakas v. Illinois*, 439 U.S. 128, 140 (1978).  However, the Court finds the term "standing" to be a helpful shorthand in this context, and the Court notes that the Sixth Circuit has used the term "standing" in this context within the past month. *See United States v. Bah*, --- F.3d ---, 2015 WL 4503253, at *5 (6th Cir. July 24, 2015).

9

burden of showing reasonable expectation of privacy in text messages retrieved from another individual's phone).

Scott has not carried his burden of establishing that he had a reasonable expectation of privacy in records of (1) text messages sent to or from the Hubbard Phone and/or (2) calls made to or from the Hubbard Phone. In his original motion and supporting brief, Scott did not address the issue of whether he had a reasonable expectation of privacy in these records. Instead, Scott proceeded directly to the merits question and argued only that the affidavit supporting the November 18 Warrant lacked probable cause. (*See* ECF #15.)

The Government raised the standing issue in its response to Scott's motion. (*See* ECF #20 at Pg. ID 107-108.) The Government noted that Scott was listed as the "subscriber" of the Hubbard Phone, but it argued that that he had no expectation of privacy in the text messages or records obtained from that phone because Scott gave the phone to Hubbard for Hubbard to use. (*See id.* at Pg. ID 107.) In his reply brief, Scott argued that even though he gave the Hubbard Phone to Hubbard, his (Scott's) status as the phone's "subscriber" gave him a reasonable expectation of privacy in the phone's text messages and call records. (*See* ECF #22 at 2-3, Pg. ID 151-152.) But Scott's status as the "subscriber" of the Hubbard Phone – in effect his ownership of the account associated with the phone – is not

10

enough, standing alone, to give rise to a reasonable expectation of privacy in the texts to and from, and records related to, the Hubbard Phone.

"[O]wnership alone does not justify a reasonable expectation of privacy. The Supreme Court has consistently held that privacy interests are not coterminous with one's property rights." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003). "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of [a] [c]ourt's inquiry." *United States v. Salvucci*, 448 U.S. 83, 91 (1980) (internal citation omitted). "In deciding whether someone has a reasonable expectation of privacy for Fourth Amendment purposes, courts consider a number of factors," of which ownership is just one:

> the person's proprietary or possessory interest in the place to be searched or item to be seized .... whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; [and] whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion[.]

*Shamaeizadeh*, 388 F.3d at 544-545.

Apart from identifying himself as the "subscriber" of the Hubbard Phone, Scott has not identified any *evidence* in the record that would support a reasonable expectation of privacy in the phone under the relevant factors. For example, Scott

11

argues in his reply brief that he could have excluded others from using the Hubbard Phone, or could have taken it back from Hubbard at any time, but he has not presented any *evidence* of this purported control.  Though he testified at the evidentiary hearing before the Court, Scott did not attempt to explain the circumstances under which he gave the Hubbard Phone to Hubbard, the conditions under which Hubbard was permitted to keep and use the phone, and whether he (Scott) ever attempted to exclude anyone other than Hubbard from using the phone.  Moreover, Scott's attorney candidly acknowledged at the hearing that "beyond telling [the Court] that [Scott] is the subscriber, [counsel could not] give [the Court] any other information about the usage of the [Hubbard] [P]hone."  Scott's counsel further acknowledged that others (beyond Hubbard) may have had access to the Hubbard Phone.  In sum, Scott has not presented any evidence that he took any precautions to maintain the privacy of the Hubbard Phone once it left his possession or that Scott could have, or did, exercise control over the phone.

Under nearly identical circumstances, a Pennsylvania federal district court recently concluded that a defendant who was listed as the "subscriber" of a cell phone that he gave to a third party "failed to satisfy his burden of demonstrating that he had an expectation of privacy" in the phone's messages and content:

> Here, as the phone's subscriber, Brewer [the defendant] may have had some unknown property interest in the phone. But, considering the other relevant factors, it is clear to us that Brewer has failed to satisfy his burden of

12

demonstrating that he manifested a subjective expectation of privacy in the phone. First, at the time the phone was seized, it was in the possession of Jamell Smallwood. Second, Brewer produced no evidence to demonstrate that, despite Smallwood's possession, he maintained the ability exclude others from the phone or took precautions to maintain his privacy in the phone. To the contrary, the evidence shows that Brewer voluntarily turned the phone over to Smallwood, who subsequently claimed complete ownership and control. Therefore, by his conduct, Brewer did not exhibit an actual expectation of privacy in the phone. Accordingly, we find that Brewer had no legitimate expectation of privacy and thus lacks the capacity to challenge the search of Smallwood's phone.

*United States v. Brewer*, 2015 WL 2250150, at *3 (M.D. Pa. May 12, 2015) (internal citation omitted). The same is true here.

## C.   Scott's Motion to Suppress Evidence Seized Pursuant to the November 18, 2013, and January 9, 2014 Warrantless Orders

As part of their investigation into the Seaholm carjacking, the Agents sought and obtained from the 48th District Court two orders compelling the production of certain records maintained by cellular phone providers. These orders – dated November 18, 2013 (the "November 18 Order") and January 9, 2014 (the "January 9 Order") – were not search warrants; rather, they were orders issued pursuant to the federal Stored Communications Act, 18 U.S.C. § 2701 *et seq*.[4]   The

---

[4] The Stored Communication Act permits law enforcement to obtain an order requiring a cell phone provider to disclose certain historical records upon a showing of "reasonable and articulable facts showing that there are reasonable grounds to believe that the … records … sought[] are relevant and material to an

Government has informed the Court that the police did not obtain any information or records in response to the January 9 Order (*see* ECF #31 at ¶3, Pg. ID 199), and thus the records produced pursuant to the November 18 Order are the only ones now at issue.

The November 18 Order required the cell phone providers to produce two types of records: (1) records identifying which cellular phones were connected to cellular towers within one mile of Seaholm High School in the ninety minutes surrounding the time of the carjacking (the "Cell Tower Connection Records") and (2) records of calls made during that same 90-minute time period by certain cellular phones that connected to the cellular towers near Seaholm (the "Call History Records").[5]   According to the Government, the Cell Tower Connection Records and the Call History Records show that the Scott Phone and the Hubbard

---

ongoing police investigation."  18 U.S.C. § 2703(d).  "This showing is lower than the probable cause standard required for a search warrant" under the Fourth Amendment.  *United States v. Herron*, 2 F.Supp.3d 391, 401 (E.D.N.Y. 2014).

[5] Specifically, with respect to the Cell Tower Connection Records, the November 18 Order required cell phone companies to provide "all transactional records (including, without limitation, registrations, and connection records) processed through any cell site located within 1 (One) miles" of where the carjacking occurred between the hours of 4:00 a.m. and 5:30 a.m. on the day of the carjacking."  (ECF #24-3 at 8, Pg. ID 181.)  With respect to the Call History Records, the November 18 Order required the production of the "(A) name; (B) address, (C) local and long distance telephone connection records, and records of session times and durations; (D) length of service (including start date) and types of service utilized; (E) telephone or instrument number or other subscriber number or identity…; [and] (F) means and source of payment for such service" of certain identified cell phone numbers.  (*Id.*)

14

Phone were in the vicinity of Seaholm around the time of the carjacking. (*See* ECF #19 at 5, Pg. ID 97.) The Government also said during oral argument that these records show the Scott Phone and the Hubbard Phone "were communicating" during this same time period.

Scott has moved to suppress the Cell Tower Connection Records and the Call History Records on the grounds that (1) the collection of the data in question was subject to the requirements of the Fourth Amendment and (2) the affidavits supporting the requests for the November 18 Order did not satisfy the Fourth Amendment's probable cause standard.[6] (*See* ECF #16.) As set forth above, in order to raise a Fourth Amendment challenge like this, Scott must have had a reasonable expectation of privacy in the data obtained. *See, e.g., United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001) ("It is well established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was

---

[6] Scott (properly) does not appear to be seeking suppression of the evidence obtained from the November 18 Order on the ground that the government failed to satisfy the requirements of the Stored Communications Act (i.e., that the application in support of the November 18 Order did not contain "reasonable and articulable facts showing that there are reasonable grounds to believe that the … records … sought[] are relevant and material to an ongoing police investigation." 18 U.S.C. § 2703(d).) It is well recognized that the Stored Communications Act "does *not* provide an exclusion remedy. It allows for civil damages, and criminal punishment, but nothing more." *United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) (emphasis in original; internal citations omitted); *United States v. Guerrero*, 768 F.3d 351, 357-358 (5th Cir. 2014) ([S]uppression is not a remedy for a violation of the Stored Communications Act").

searched").  The Court will now analyze Scott's possible privacy interests in data from the Hubbard Phone and the Scott Phone separately.

### 1.   Scott Has Not Established That He Had a Cognizable Expectation of Privacy in Data Concerning the Location and Call History of the Hubbard Phone

For the reasons explained in detail above, Scott has failed to carry his burden of establishing that he had reasonable expectation of privacy in any data related to the Hubbard Phone. (*See* section B, *supra*.)  Thus, Scott may not seek suppression of any data concerning the location and call history of the Hubbard Phone under the Fourth Amendment.

### 2.   Scott Has Not Established That He Had a Reasonable Expectation of Privacy in the Cell Tower Connection Records That Showed the General Historical Location of the Scott Phone

The Cell Tower Connection Records the police obtained as a result of the November 18 Order provided an extremely limited set of data concerning the historical location of the Scott Phone.  According to the Government, this data revealed only that the Scott Phone had been in the vicinity of Seaholm High School at some point during a discrete 90-minute period of time.  (*See* ECF #19 at 5, Pg. ID 97.) Sixth Circuit precedent forecloses Scott's claim that he had a reasonable expectation of privacy in that limited set of historical location data.

In *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012), the Sixth Circuit held that a defendant did not have a reasonable expectation of privacy in cellular

16

telephone data that revealed his location in real time over the course of three days. In light of *Skinner*, the Court must conclude here that Scott did not have a reasonable expectation of privacy in the data that revealed the general historical location[7] of his cell phone for, at most, a ninety-minute period on a single morning.[8]   And because Scott lacked a reasonable expectation of privacy in that data, he may not raise a Fourth Amendment challenge to its collection.

---

[7] Notably, the location data obtained from the Cell Tower Connection Records did not reveal the precise historical location of the Scott Phone; it only indicated whether the phone had been within a one-mile radius of Seaholm High School at a specific period of time.  *See United States v. Jones*, 785 F.3d 498, 515 (11th Cir. 2015) ("[h]istorical cell tower location data does not identify the cell phone user's location with pinpoint precision").  Thus, the Cell Tower Connection Records do not raise the same concerns as other types of tracking devices and records, such as a real-time GPS, which can pinpoint a person's exact location (and can reveal, for example, that a person was at a psychiatrist's office or an abortion clinic).  *See, e.g., United States v. Jones*, 132 S.Ct. 945, 955 (Sotomayor, J. concurring) ("GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations").  Moreover, the data obtained from the Cell Tower Connection Records did not necessarily allow law enforcement to track the Scott Phone's movement for the entire ninety-minute period.  The data would have revealed the location of the Scott Phone for the entire ninety minute period only if the phone remained in the limited geographical radius in question for that entire period.

[8] The Court notes that the Eleventh Circuit and the Fifth Circuit have concluded that a defendant lacks a reasonable expectation of privacy in cellular data that reveals his historical location. *See Davis*, 785 F.3d 498 at 511-512; *In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600, 611–615 (5th Cir. 2013).  While these decisions support this Court's decision that Scott lacked a privacy interest in the data at issue here, this Court need not resolve, and expresses no opinion concerning, whether a defendant may ever have a legitimate privacy interest in cellular data showing his historical location.   The Court

17

This conclusion is not undermined by the primary authority that Scott relied upon in support of his request to suppress: *In re U.S. ex rel. Order Pursuant to 18 U.S.C. Section 2703(d)*, 930 F.Supp.2d 698 (S.D. Tex. 2012).   In that case, a Magistrate Judge held that law enforcement had to satisfy the Fourth Amendment's probable cause standard in order to obtain an order under the Stored Communications Act requiring a cellular service provider to produce historical information showing the locations of certain cell phones during an eight-hour period.  That decision cannot be reconciled with *Skinner*, which is controlling and binding precedent here.   Moreover, another Magistrate Judge from the same district has opined that the decision has been effectively overruled by a more recent decision of the Fifth Circuit. *See In Re: Application for Cell Tower Records Under 18 U.S.C. § 2703(D)*, 2015 WL 1022018 (S.D. Tex. Mar. 9, 2015) (citing *In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013).  Scott is therefore not entitled to suppression of the historical location data from the Cell Phone Tower Records.

---

concludes only that Scott lacked a sufficient privacy interest in the specific and narrow set of historical location data at issue in this case.

3.    **Scott Has Not Established That He Had a Reasonable Expectation of Privacy in the Call  History Records Showing the Calls Made to and From the Scott Phone During the Ninety-Minute Period in Question**

The Call History Records of the Scott Phone revealed, among other things, what numbers the Scott Phone was calling and how long those conversations lasted during a single ninety-minute time period. The Call History Records did not reveal the content of those communications.  Because the type of data reflected in the Call History Records is routinely collected and stored in the business records of cellular phone providers, Scott did not have a reasonable expectation that this data would remain private.  Suppression of these records is therefore not warranted.[9]

This conclusion follows from the Supreme Court's decision in *Smith v. Maryland*, 442 U.S. 735 (1979).  In *Smith*, the Supreme Court held that a defendant had no expectation of privacy in the numbers he dialed on a telephone.  The court rested this decision in part on its belief that:

> [P]eople in general [do not] entertain any actual expectation of privacy in the numbers they dial.  All telephone users realize that they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed. All subscribers realize, moreover, that the

---

[9] The Court is not deciding, and does not intend to hold, that an individual may never have a reasonable expectation of privacy in records like the Call History Records, especially those that encompass a longer period of time.  The Court decides only that given the limited time period and amount of data retrieved in the Call History Records at issue here, that Scott had no reasonable expectation of privacy in those records.

19

> phone company has facilities for making permanent
> records of the numbers they dial, for they see a list of
> their long-distance (toll) calls on their monthly bills.

*Id.* at 742. The Supreme Court then concluded that "[w]hen he used his phone, [the defendant] voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business. In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed." *Id.* at 744.

The same analysis applies here. Scott used the Scott Phone to make telephone calls, and the numbers he dialed and the length of his calls were recorded in the business records of his cellular phone provider. Scott voluntarily conveyed this information to the phone company, and he thus lacked an expectation of privacy in it.

The Eleventh Circuit recently reached the same conclusion in *Davis*, *supra*. In that case, the Eleventh Circuit held that it "did not violate the Fourth Amendment" for the government to obtain cell phone company records that included, among other things, "(1) telephone numbers of calls made by and to [a defendant's] cell phone; (2) whether the call was outgoing or incoming; [and] (3) the date, time, and duration of the call" – records that were nearly identical to the Call History Records obtained here. *Davis*, 785 F.3d at 502-503. The Eleventh Circuit determined that "[t]his type of non-content evidence, lawfully created by a

20

third-party telephone company for legitimate business purposes, does not belong to [a defendant], even if it concerns him." *Id.* at 511.  The court then concluded that the defendant could "assert neither ownership nor possession of the third-party's business records he sought to suppress," and that he had "no subjective or objective reasonable expectation of privacy in [the cellular phone company's] business records." *Id.*  It thus held "that the government's obtaining a § 2703(d) court order for production of [a cellular phone provider's] business records…did not constitute a search and did not violate the Fourth Amendment rights of [the defendant]." *Id.* at 513.

Scott faces the same difficulties here.  The Call History Records he seeks to suppress were compiled by, and belong to, his cellular phone provider, and he has provided no basis under which the Court can conclude he had a reasonable subjective or objective expectation of privacy in those records.  *See also United States v. Davis,* 2011 WL 2036463, *3 (D.Or. May 24, 2011) ("It is well established that a reasonable expectation of privacy extends only to the content of telephone conversations, not to records that indicate that the conversations occurred. Basic subscriber data which identifies a call's origination, destination, duration, and time of call enjoy no privacy protection because the data is incidental to the use of the telephone, and contains no content information. Telephone users realize that telephone companies retain records of this information for a variety of

21

legitimate business purposes, including billing and fraud protection") (internal citations omitted).

As Scott did not have a reasonable expectation of privacy in the Call History Records obtained as a result of the November 18 Order, he is not entitled to suppression of the records on the ground that their collection violated the Fourth Amendment.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Scott's motions to suppress evidence (ECF ## 15, 16, and 17) are **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 5, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 5, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113